Rockingham,
No. 4301.

VIRGINIA SPRONG *v.* PHILLIPS EXETER ACADEMY.

Argued May 4, 1954.

Decided June 23, 1954.

*Maurice A. Broderick* (by brief and orally), for the plaintiff.

*Waldron, Boynton & Waldron* (*Mr. Boynton* orally), for the defendant.

DUNCAN, J. The findings of the Trial Court that the plaintiff was suffering from pains in her back which "whether due to hysteria or not, are the result of the accident of February 16, 1952," are sufficiently supported by the evidence, even though medical witnesses called by the defendant testified that they could find no objective symptoms to account for the plaintiff's complaints of pain. The physician whom she consulted on February 19, 1952, had no doubt that she "really hurt herself when she tumbled," and the credibility of the testimony of the plaintiff herself was for the Trial Court.

A more substantial issue is presented with respect to the determination of compensation. The evidence as to certain terms upon which the plaintiff was employed was in conflict, but the

hours which she worked and the cash paid her were not in dispute. She first worked for the defendant on September 28, 1951, for a third of a day, or in connection with a single meal. She next worked four full days of eight hours each, from October 12 to 15 inclusive. From November 25 to 28 inclusive she worked three and two-thirds days. She was again called upon to work two full consecutive days on three different occasions in January, 1952, and worked two-thirds of a day on February 4. Commencing February 10, she was employed six full days of the calendar week for each of two weeks, excepting that on the last day of her employment, February 23, she worked only one-third of the day. As previously stated, the accident occurred on February 16, a week before she ceased to work.

These facts were not in dispute, nor was the fact that she received total pay for her work of $107.20, plus meals, which the Court reckoned at the rate of $2.50 a day for a total value of $65.00. Thus her total wages according to the findings appear to have been $172.20.

The defendant argues that the only evidence of the "market value" of the meals (s. 2 IV) was the testimony that a charge of fifty cents a meal was made for the same meals when served to guests in the school dining room, and that the finding of a value of $2.50 a day is unsupported by any evidence. The record confirms the argument. While the plaintiff described in some detail what the meals consisted of, her testimony concerning the cost of such meals prepared at home was stricken from the record without exception. Similarly testimony by the defendant's director of dining halls as to what the meals would cost "at other places" was excluded without exception, upon objection that the witness was not qualified. The Court ruled that it was "just as qualified as he is." The burden was upon the plaintiff to establish the market value of board received as a part of her remuneration. S. 2 IV, *supra*. While board is one of the "advantages which can be estimated in money" within the meaning of this subsection, the quoted language is not understood to imply as the plaintiff argues that its "market value" is to be "estimated" by the trier of the facts rather than proved by the parties. Since it is not clear from the record whether the Trial Court intended to take judicial notice of the value of meals a year or more before the trial, as being a matter of common knowledge, or whether his finding resulted from the interpretation urged by the plaintiff, the finding that the market

value of the meals was $2.50 a day, of which there was no evidence, is vacated. Unless their value is fixed by agreement, it will be for the Trial Judge to determine whether justice requires that either party be given a further opportunity to submit evidence upon this issue, or to be heard on the question of whether the Court may use its common knowledge to arrive at a figure. See *Indian Head Nat. Bank* v. *Theriault*, 97 N. H. 212, 215.

It appeared that prior to the accident the defendant's infirmary was filled with students due to an epidemic, which accounted for the increased time which the plaintiff gave to her employment in February, 1952. She testified that the defendant's director of dining halls "asked me if I would like to work steady and I said yes, so I started in working steady." The director testified the plaintiff was hired as a part-time employee, to work whenever she was needed. Full-time employees, he testified, worked eight hours a day, six days a week, and were required to undergo physical examinations before being accepted on the "steady payroll" for "steady work" from September to June. According to his testimony part-time employees were given no regular day off, but worked on any day when requested.

Compensation under the Workmen's Compensation Law is determined with reference to the employee's "average weekly wages" (Laws 1947, c. 266, ss. 21, 23) a phrase defined by section 2 V of the Law. Subsection (1) provides that "except as provided in subsection (2)" average weekly wages shall be computed on a basis of "total straight time earnings" of the employee. Subsection (2) provides a method for computing the wages of an employee "whose normal schedule of hours during the preceding fifty-two weeks [or less as the case may be] has not exceeded twenty-four hours a week"; and subsection (3), inserted by amendment in 1951 (Laws 1951, c. 54, s. 1) applies to "employees engaged in occupations with an indeterminate work week."

Under either (2) or (3), where employment has been for less than fifty-two weeks, the average wages are determined by dividing total earnings by the actual number of weeks worked. If either of these subsections apply, the plaintiff's average weekly wage using the value for meals used by the Court would have been $14.35, since she worked at some time during part of twelve different weeks on the basis of the defendant's work-week which ended on Sunday.

Since the Trial Court found the plaintiff's average wage to be

$33.12, it is apparent that it was actually computed under subsection (1) which calls for a division of the total "straight time earnings" ($172.20) by the actual number of hours worked (208), and multiplication of the quotient thus obtained by forty. The defendant argues that computation under subparagraph (1) was error, and points out that the plaintiff's average hours for the weeks worked were "well under twenty-four hours per week." Subsection (2) however applies to employees "whose normal schedule of hours" has not exceeded twenty-four hours a week, rather than those whose "average schedule" has not exceeded that number.

According to the evidence, the plaintiff's normal schedule prior to February 10, or the week ending February 17, had been less than twenty-four hours a week. For the weeks ending February 17 and 23, however, her schedule was forty-eight hours in the first week, and thirty-four and two-thirds in the second. In the light of the plaintiff's testimony, it was competent for the Court to find that on or about February 10, the plaintiff's "normal schedule" was changed when she was placed on a schedule of "steady work" and that her normal schedule for the week preceding the accident, in fact exceeded twenty-four hours. This finding, which is implicit in the decree, precluded application of subparagraph (2) which is limited to those whose normal schedule during the weeks preceding the accident "has not exceeded" twenty-four hours a week.

The question remains whether subsection (3) governs as a matter of law. This relates to employees "engaged in occupations with an indeterminate work week." The occupation in which the plaintiff was engaged was not one with an indeterminate work week. The occupation was full time, seven days a week. Prior to February 10, the length of the week which the plaintiff actually worked might be said to be "indeterminate," since it depended upon the extent to which the defendant required her services from week to week. But since the Court might find, and must be presumed to have done so, that beginning February 10 the plaintiff was employed "steadily," or for a six-day week, subsection (3) could not apply, whether the character of the work week be determined from the standpoint of the occupation or of the plaintiff's actual hours of work. *Cf.* 2 Larson's Workmen's Compensation Law, *ss.* 60.21, 60.22.

Since compensation was computed under subsection (1), a finding or ruling that neither subsection (2) nor (3) applied is to be presumed. No issue is raised with respect to "straight time earn-

ings" as opposed to overtime. *Cf. Cote* v. *Company,* 85 N. H. 444. There was evidence to support the application of subsection (1), and hence there was no error of law in applying it.

Two additional errors appear however, which operate to make the award excessive. With respect to temporary partial disability, the Court found that "an award of Twelve Dollars per week would probably not exceed sixty-six and two-thirds percent of her diminished earning capacity," and awarded compensation at that rate. Had the Court found that this rate would probably not exceed two-thirds of "the diminution of her earning capacity," the finding might stand, for $12 would then be the rate prescribed by the statute: "a weekly compensation equal to sixty-six and two-thirds per cent of the difference between his average weekly wage before the injury and the average weekly wage which he is able to earn thereafter." *S.* 23. See *Desrosiers* v. *Company,* 98 N. H. 424. From the finding made however, it necessarily follows that the wage which the plaintiff "is able to earn" since the accident was found to be at least $18. Otherwise $12 would exceed two-thirds of her "diminished earning capacity." On a basis of $18, the difference between an earning capacity of $33.12 before the accident and $18.00 after the accident would be $15.12, and two-thirds thereof, $10.08. Thus the amount which the plaintiff would receive for temporary partial disability in consistency with the implied findings would be $10.08 per week. *Bolduc* v. *Company,* 96 N. H. 235, 239.

The plaintiff's testimony tended to show that while before the accident she was able to do a full day's work, her condition since February 23, 1952, has been such that she could work only a few hours at a time at any work which she has since attempted. There was medical testimony, on the other hand, that she should be able to do work not involving lifting or carrying heavy objects. Since it is not plain whether the Trial Court intended the implied finding that her earning capacity was reduced to $18 a week (in order to justify the finding that $12 a week would probably not exceed two-thirds of her diminished earning capacity) we are of the opinion that justice will best be served by reconsideration of the findings in the Trial Court in the light of this opinion. If the finding of an earning capacity of $18 a week was intended, the figure of $10.08 for partial disability is subject to variation to the extent that the finding as to the average weekly wage before injury may be changed by any different finding as to the market

value of meals. The rate of $22.08 for total disability likewise depends upon the figure ultimately found to be the value of meals.

The award of $552 computed to January 31, 1953 at the rate of $12 a week was obviously for forty-six weeks. Since four weeks total disability compensation was awarded, the total awarded was for fifty weeks in all, to January 31. But because the plaintiff's disability commenced a week after the accident, there were only forty-nine weeks to January 31 for which she was entitled to compensation. Accordingly, the allowance for temporary partial disability to January 31, 1953 should have been $453.60 for forty-five weeks at a rate of $10.08; and the total compensation to which the plaintiff was entitled as of January 31, 1953 should have been $541.92 at a rate of $22.08 for total disability and $10.08 for partial disability.

So much of the decree as relates to the amount of compensation is vacated, and the case is remanded for such revision of the decree as will give proper effect to the Court's finding as to the plaintiff's earning capacity during partial disability and to whatever finding may be made on rehearing as to the value of meals; and for correction of the error indicated in the preceding paragraph.

*Remanded.*

All concurred.